HEIRS OF ÁNGEL PÉREZ PUERTA, Petitioners, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, ETC., Respondent.

No. CI-66-19.      Decided May 19, 1967.

*Hipólito Marcano* for petitioner. *Donald R. Dexter, Milagros Muñiz Bou, Gilberto Cobián Aparicio,* and *Jorge Márquez Gómez* for the Manager of the State Insurance Fund.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the court.

██ Because it believed that the death of Lieutenant Ángel M. Pérez Puerta was due to causes extraneous to the duties of his employment, the Industrial Commission affirmed the decision of the Manager of the State Insurance Fund denying compensation to his dependents. The final determination depends on the application of the dual-purpose rule to trips undertaken by the employees. In *Bacó* v. *Industrial Commission,* 52 P.R.R. 836 (1938),[1] we adopted for these situations the formula elaborated by Justice Cardozo in *Marks' Dependents* v. *Gray,* 167 N.E. 181 (N.Y. 1929)[2] which is set forth as follows:

---

[1] It involved the most frequent modality of the application of the dual-purpose rule. We held that an accident occurring to employees of an employer and who had left the office in which they were regularly employed to go home for lunch was not compensable by reason of the fact that they were charged with the duty of getting the mail which their employer had in his town office for delivery in his field office.

[2] This formula has survived in the majority of the jurisdictions despite the fact that even in the State of New York itself statements have been made in the sense that it does not prevail. In Larson, 1 Work-

"If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. . . . If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk."

As it frequently happens it is easier to set forth the rule than to apply it. It depends decisively on the circumstances which concur in each specific case, and above all on the significance attributed to each one of those circumstances.

The facts which the Industrial Commission considered proved, copied from the extensive order which it issued are the following:

"The evidence presented in this case established that at the time of the accident in which the worker, Ángel M. Pérez Puerta died, he held the position of Lieutenant of the State Police in the police district of Utuado. That he studied law in the Interamerican University in Hato Rey, Puerto Rico. The day of the accident the deceased worker arrived at the police station at 8:30 a.m.

"That same day an explosive device, known as Molotov bomb, was found in Utuado. The discovery of the device was notified by Pérez Puerta to the Commander of Arecibo, Mr. Emilio Hernández Soto, and to the chemists of the Police in San Juan. Commander Hernández Soto notified also the discovery of the device to the Office of the Police Superintendent in San Juan and to Sergeant Carmelo Méndez of Arecibo, expert examiner of that kind of device. At midday, between 11:00 and 12:00 o'clock, the explosive device was put in ice as a means of protection, by order of Sergeant Méndez.

men's Compensation Law, § 18.22, the situations are discussed and distinguished, and it is concluded that the survival of the rule is due to the fact that no one has succeeded in phrasing a better one. 5 NACCA L.J. 64 (1950).

"At the police station of Utuado policemen Miguel Requena Maldonado, Juan A. Beltrán, Jorge Torres Bauzá, and Heredia, four policemen, were doing office work that day. In charge of the police force in Utuado was Sergeant Luis M. Álvarez together with Lieutenant Pérez Puerta. That day as a result of the discovery of the explosive device Sergeant Víctor M. Acosta, who was on vacation leave, and other members of the police came to the police station. Although the Office of the Police Superintendent had been informed of the discovery of the explosive device, the chemical technicians of the Office of the Police Superintendent did not go to Utuado. The only one to go there was Sergeant Carmelo Méndez, expert in that type of device, who ordered the device to be put in ice.

"The deceased, Lieutenant Pérez Puerta, on the day of the accident performed his duties in the police station of Utuado, signed documents, reports, and attended to the matter related to the explosive device. At about 3:30 or 4:00 in the afternoon he left the police station of Utuado, telling policeman Miguel Requena Maldonado upon leaving 'that he was leaving and if next day he came a little late it was because he had to go to a meeting of officers in the commander's office.' Lieutenant Pérez Puerta lived in the town of Hatillo. That same day at about 8:00 p.m., more or less, he died in an automobile accident in State Highway No. 2 in the jurisdiction of the town of Dorado, when he was going to San Juan. There was a difference of four (4) hours from the time the deceased worker left the police station of Utuado to the time of his death.

"Sergeant Víctor M. Acosta in the course of his testimony said that Lieutenant Pérez Puerta that day of the accident was going to Río Piedras to study and had instructed him to take charge of the explosive device, while he was going to take steps so that the technicians from Headquarters would come.

"Commander Hernández Soto was asked whether in former occasions in which explosives were seized in Utuado, Lieutenant Pérez Puerta had gone to look for technicians at San Juan Headquarters, and he answered 'no because they had a good system of communications.' The explosive device was two or three days under observation and the chemical technicians of the Police Headquarters in San Juan never came. Apparently they did not give much importance to said explosive device.

"Lieutenant Pérez Puerta was a law student at the Interamerican University in Hato Rey. The day of the accident he was coming to study at the said University. He had informed that he was going to the Police Headquarters in Hato Rey in order to request the chemists of this agency to be sent to examine the explosive device which was found in Utuado. The worker did not perform any of the two commitments since he died on the way to San Juan."

In the analysis of the facts proved in order to reach the conclusion that the accident was not compensable, it said:

"In the instant case, worker Ángel M. Pérez Puerta was going, the night of the accident, to the Interamerican University in Hato Rey to study and he was going to take advantage of the trip to request Police Headquarters to send some chemists to examine the explosive device which they had already in ice. The trip was undertaken by the deceased worker at night. He was a night law student at the Interamerican University in Hato Rey. After the death of Lieutenant Pérez Puerta, no other officer came to San Juan to have the chemists sent to the police station of Utuado. The chemists never went to examine said device. That fact establishes that Lieutenant Pérez' trip to Police Headquarters in San Juan was not important. The trip of the worker Ángel M. Pérez Puerta to San Juan was motivated mainly by the need to attend classes at the Interamerican University. If the deceased would not have had to come to study that night of the accident, the trip would not have been made. The trip was not necessary, since the office of the Police Superintendent knew about the facts. Lieutenant Pérez Puerta as well as the Area Commander, Mr. Hernández Soto, had notified Headquarters in San Juan."

Larson, 1 Workmen's Compensation Law, § 18.12, sets forth the rule which prevails in the majority of the jurisdictions, in the following words:

"When a trip serves both business and personal purposes, it is a personal trip if the trip would have been made in spite of the failure or absence of the business purpose and would have been dropped in the event of failure of the private purpose, though the business errand remained undone; it is a

business trip if a trip of this kind would have been made in spite of the failure or absence of the private purpose, because the service to be performed for the employer would have caused the journey to be made by someone even if it had not coincided with the employee's personal journey."

The Industrial Commission, upon applying the rule, advanced the opinion that "The important question to decide is which of the two errands which the worker was going to perform was the most important. Whether to attend his law class at the Interamerican University that night or to visit Police Headquarters to demand the sending of the chemical technicians to Utuado." This approach, which incorporates the interpretation of the principal or dominant purpose of the trip, derived from the opinion in *Bacó, supra*,[3] is not favored. As Larson, *op. cit.*, § 18.13, says, Justice Cardozo does not refer to the primary purpose of the trip, he referred to the fact that the business motive was a concurrent cause of the trip, and he adds: "One detail must be stressed to make this rule complete: it is not necessary, under this formula, that, on failure of the personal motive, the business trip would have been taken *by this particular employee at this particular time*. It is enough that someone sometime would have had to take the trip to carry out the business mission. Perhaps another employee would have done it; perhaps another time would have been chosen; but if a special trip would have had to be made for this purpose, and if the employer got this necessary item of travel accomplished by combining it with this employee's personal trip, it is accurate to say that it was a concurrent cause of the trip . . . ." See Schneider, 7 Workmen's Compensation Text, chap. 31.

---

[3] We said at page 842 ". . . [A]lthough for some reason the employee might not have had to get the mail, the trip would have gone forward in any event. *The principal reason for the trip* was to eat lunch, getting the mail was incidental."

█ It is not necessary, therefore, to weigh which of the two purposes of the trip was dominant. It is proper to determine only whether it was necessary to perform the business errand, either by that same employee or by another, the day of the accident or some other day. It assumes that even though the business purpose might be insufficient, it was sufficiently urgent to justify the necessity of the trip. See illustrative cases cited in Larson, *op. cit.*, § 18.14. The best characterization of the rule would be not the duality of purposes, but the concurrence of purposes. *Levine* v. *Builders Aluminum Stone Co.*, 186 So.2d 26 (Fla. 1966).

█ Even applying this less restrictive test it is impossible to hold that the accident in which petitioners' predecessor lost his life is compensable. From the foregoing statement of facts it appears that the errand which Lieutenant Pérez Puerta sought to undertake was not necessary since the usual and common procedure in the cases of discovery of explosives had been followed. The superior authorities had been notified, the office of the area commander as well as the office of the general commander, the technicians had been notified, and through Sergeant Méndez' intervention the immediate measure of precaution which the situation required was taken. The fact that subsequently the technicians of the Police Headquarters did not visit the town of Utuado to take steps concerning the Molotov bomb found, lends support to this conclusion. Neither was it customary to take personal steps to seek the sending of technicians, for as Commander Hernández Soto testified, the good system of communications which the State Police has at the present time was sufficient. To sum up, the purpose concerning the employment would not have required the trip either at the time it occurred or at any other time, by Lieutenant Pérez Puerta or by any other officer or policeman.

The order entered by the Industrial Commission on July 28, 1966, will be affirmed.